Daniel P. Struck
Arizona Bar No. 012377
*(admitted pro hac vice)*
Jacob B. Lee
Nevada Bar No. 012428
Ashlee B. Hesman
Nevada Bar No. 012740
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
jlee@strucklove.com
ahesman@strucklove.com

Gina G. Winspear
Nevada Bar No. 005552
DENNETT WINSPEAR, LLP
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone: (702) 839-1100
gwinspear@dennettwinspear.com

*Attorneys for Defendant CoreCivic, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Kathleen Bliss, on behalf of herself, the Proposed Nationwide Rule 23 Class, and the Proposed Nevada Subclass,<br><br>Plaintiff,<br><br>v.<br><br>CoreCivic, Inc.,<br><br>Defendant. | Case No. 2:18-cv-01280-JAD-GWF<br><br>**STIPULATION FOR ENTRY OF ORDER CONTROLLING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Kathleen Bliss ("Plaintiff") and CoreCivic, Inc. ("CoreCivic") (collectively, the "Parties" and singularly, "Party"), through their respective counsel, stipulate and agree that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action, and jointly request that the Court enter the following Order Controlling Discovery of Electronically Stored Information ("ESI").

**I.    GENERAL**

A.    This Stipulation and Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules of Civil Practice, General and Special Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

B.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the litigation consistent with the Court's Local Rules of Civil Practice, General and Special Orders, and any other applicable orders issued or rules promulgated by the Court.

C.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation and Order shall be construed so as to ensure a just, speedy, and cost-effective exchange of information consistent with Fed. R. Civ. P. 1 and any orders by the Court.

1.    Except as specifically limited herein, this Stipulation and Order governs the production of discoverable documents by the Parties during the litigation.

2.    This Stipulation and Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedures or the Court's orders, or imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other action.

3.    All documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein, subject to any Protective Order which may be entered by the Court. Nothing in this Stipulation and Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to move for an order to compel discovery pursuant to Fed. R. Civ. P. 37(a)(3).  Likewise, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate

3532482

order pursuant to Fed. R. Civ. P. 26(c), on the ground that the sources are not reasonably accessible because of undue burden or cost.

4.     The Parties agree to promptly alert the other Party concerning any technical problems associated with complying with this Stipulation and Order. To the extent compliance with this Stipulation is believed to impose an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5.     The Parties will attempt to resolve, in person, in writing (including e-mail), or by telephone, disputes regarding the issues set forth herein prior to seeking relief from the Court. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek the Court's intervention in accordance with the Court's procedures and applicable Rules.

## II.    LIAISONS

The Parties will identify liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Plaintiff's liaison is Angi Kittelson.  Defendant's liaison is Michael Giardina.  Each e-discovery liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties' liaisons will be present during conferences about ESI, as possible, and help resolve disputes without Court intervention whenever possible.

## III.    PRODUCTION FORMAT – HARDCOPY

Hardcopy documents should be produced as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e*., .dat). The database load file should contain the following fields: "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH," "CUSTODIAN," "PGCOUNT," "PRODVOLUME," "RECORDTYPE," "CONFIDENTIAL", and "EXTRACTEDTEXT"[1] as defined in the attached Appendix 1: Metadata Fields. The documents should be logically unitized (*i.e*., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be

---

[1] EXTRACTEDTEXT need not be populated for handwritten notes.

3

3532482

produced in the order in which they are kept in the usual course of business. Scanned documents shall maintain the orientation of the original document. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**IV.      PRODUCTION FORMAT – ELECTRONICALLY STORED INFORMATION**

ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, word processing, presentation, and spreadsheet-type files, including, but not limited to, Microsoft Word, PowerPoint, Excel or other delimited data files, all of which should be produced in native format. Files which should be produced in native format include, but are not limited to, files with the following extensions: .doc, .docx, .wav, .mpg, .ppt, .pptx, .xls, .xlsx, .csv, .dta, .dat, .cpt, .opt, .dll, .xpt, .sd2, .sav, .zsav, and .sys. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1: Metadata Fields, attached hereto, to the extent captured at the time of the collection. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, the Parties will meet and confer in good faith regarding the production, but nothing in this Stipulation and Order shall require any Party to engage in any computer or document forensics, or manual review and data entry, to extract, capture, collect, or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection, including but not limited to files which originated as ESI, but are sent via e-mail or other means to Producing Counsel, may be produced without metadata fields. The Parties will meet and confer to the extent one Party disagrees with the identification of certain documents as part of a targeted collection subject to the preceding sentence. An .opt image cross-reference file should also be provided for all images.

Images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, images of e-mail messages should

4

3532482

include the BCC line. Color originals may be produced in B&W image format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the Producing Party may provide a redacted image of the file, or may elect to provide a redacted native file where such redactions may be performed more expeditiously, such as, for example, with respect to data contained in Excel files. To the extent the Requesting Party believes that any redactions applied render a file insufficiently useable, such documents will be identified by Bates number(s), and the Parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVEPATH field. To the extent either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this section or to the extent records do not easily conform to native or image format (i.e., structured data), the Parties will meet and confer in good faith regarding the production.

**V.      PRODUCTION – NON-RESPONSIVE DOCUMENTS ATTACHED TO PRODUCTION-ELIGIBLE DOCUMENTS**

In an effort to avoid unnecessary expense, burden, and potential disputes, the Parties agree that document families will not be broken or separated, but accorded consistent treatment. For example, if a responsive e-mail communication contains a non-responsive attachment, the attachment will still be produced. Likewise, if a privileged e-mail communication contains an attachment which may be a matter of public record, the email and attachment may be withheld as privileged.

5

3532482

To the extent that the Producing Party believes there is good cause to deviate from this standard, they may withhold on a case-by-case basis non-responsive or privileged parent documents or attachments, which are otherwise production-eligible, by producing a single-page Bates-stamped image slip-sheet containing the confidential designation and text stating the document has been withheld as non-responsive or privileged. For any document withheld in this manner, the Producing Party shall still provide the applicable metadata fields, subject to modification, as set forth in Section XII.

**VI.     PRODUCTION FORMAT - STRUCTURED DATA**

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database (including but not limited to documents with the following file extensions: .accdb, .accde, .dbf, .nsf, .mdb, .sas, .sas7dbat, and .sql), the Parties will endeavor to extract such data into a single table in .xls, .cvs, or text-delimited format, with header-rows. If the Producing Party contends that such data cannot easily be exported into such a format, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

**VII.    PRODUCTION FORMAT - MEDIA**

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number and the Bates Number range(s) of the materials should be provided in the file name of the volume, on the physical media, and/or in the transmittal documentation (whether by letter or e-mail) for each volume. Any document production that may contain "Confidential Information" (subject to any Protective Order which may be entered by the Court.); "non-public personal information" (as defined in the Gramm-Leach-Bliley Act) or "Confidential Health Information" (as defined and protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., pts. 160 and 164, and/or any other applicable state or federal law or regulation concerning confidential health information) shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN CONFIDENTIAL INFORMATION"; "MAY CONTAIN NON-PUBLIC

6

3532482

PERSONAL INFORMATION"; or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## VIII. PROCESSING SPECIFICATIONS

A. ESI Date and Time Processing: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

B. Global or Horizontal Deduplication: Removal of duplicate documents should only be done on exact duplicate documents based on MD5 or SHA-1 hash values. For email, de-duplication should take place at the family-level only, that is, an email is an exact duplicate only if the entire family set of documents including each attachment to the parent email is duplicative of another email family including each attachment.

## IX. IDENTIFICATION AND COLLECTION OF DOCUMENTS

A. The Parties agree that responsive documents that are known to exist (as opposed to documents that would only become known to the producing party through an email or system search) will be produced in the format set forth in this agreement and in the normal course of discovery, i.e., as required under Rules 26 and 34.

B. For documents that would only become known to the producing party through an email or system search, the Parties shall meet and confer to create an iterative search protocol, detailing a process for identifying custodians and search terms. The Parties shall enter into an agreement on that protocol on or before January 10, 2019.

C. The search protocol will include provisions addressing whether or not the parties will produce emails using email thread suppression.

D. Nothing in this agreement shall delay the production of document that are not subject to the searches contemplated under Section IX.B.

7

3532482

Case 2:18-cv-01280-JAD-GWF Document 44 Filed 12/19/18 Page 8 of 18

## X.    PRESERVATION

A.    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

B.    The Parties further acknowledge that as of the entry of this Stipulation and Order, the precise scope of discovery, including possible custodians, facilities, and applicable date ranges of ESI, have not been determined. The Parties will meet and confer with each other to the extent a Party believes that limits on preservation of ESI are necessary beyond those set out below.

C.    The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources may be substantially outweighed by the burden and cost of preservation, collection, review, and production of ESI from sources that are not reasonably accessible. The Parties agree that the following ESI is not reasonably accessible:

1.    Data retained on back-up tapes.

2.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

3.    Random access memory (RAM), temporary files, or other ephemeral data.

4.    On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.    Data stored on photocopiers, scanners, and fax machines.

6.    Data in metadata fields that are frequently updated automatically, such as last-opened dates.

7.    Workstation, server, system, or network logs, such as event logs and server created audit trail records of user log-ins and activities. (This exclusion shall not apply to any call logs which are capable of being generated for any detainee telephone system.)

8

3532482

8.      Electronic Data stored on a hard drive, mobile device, or tablet (*e.g.*, iPhone, iPad, Android, and Blackberry devices) that is neither synched to nor retrievable from another source or device (*e.g.*, e-mail and calendar) that the Producing Party believes, after interviews, does not contain relevant or responsive information.

During the course of this litigation, the Parties may later agree that any of these categories of ESI is reasonably accessible, and likewise, may also agree that any other category of ESI is not reasonably accessible, without requiring a formal amendment of this Stipulation and Order.

## XI.    PHASING

Defendant will endeavor to produce known and responsive documents pursuant to Section IX.A first, including but not limited to documents responsive to Plaintiff's Requests for the Production of Documents to Defendant, Set I, Nos. 3- 4. When a production in response to an ESI discovery request cannot be completed within the time specified in the request, the Parties will meet and confer to discuss prioritization of the collection, processing, and review of the production so that (1) the ESI is produced within a reasonable period of time as required by Fed. R. Civ. P. 34(b)(2)(B), and (2) the ESI that is most relevant and responsive to the subject matter, claims, issues, and defenses is produced first, in proportion to the relative technical difficulty and resource burden to conduct such collection, processing, and review. ESI so collected will be produced in phases, and the Parties will continue to meet and confer regarding the need for, and if necessary, to prioritize the subsequent order of, later waves of productions.

## XII.    PRIVILEGE AND PRIVILEGE LOGS

A.      The Parties need not exchange the litigation hold/retention instructions issued in this litigation at this time.

B.      The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) any internal law firm communications within a law firm representing any Party; (b) any communications from counsel regarding litigation holds or preservation, collection, or review in this or any other litigation or arbitration, including communications to or from outside legal counsel for CoreCivic; and (c) any attorney-client

9

3532482

privileged communication or attorney work product created in connection with filing, defending, or prosecuting the instant action and involving either Party's outside legal counsel in this litigation.

C. The Parties agree that an entire family will be treated consistently as privileged, with respect to all attachments and all portions of the e-mail thread, so that the Parties may save time and proceed more expeditiously rather than redacting each portion of a lengthy e-mail thread, with the exception of any e-mail thread in which non-privileged communications occur subsequent to the privileged communications on the thread. In that case, the Party must undertake all efforts, including producing a redacted copy of the e-mail, to ensure that all attachments and messages which are not privileged have been produced.

D. The Parties agree that, for each document withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document claimed as privileged, an export of all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGNOATTACH (if not produced) or BEGATTACH (if produced)
- ENDNOATTACH (if not produced) or ENDATTACH (if produced)
- CUSTODIAN
- FROM or AUTHOR (as applicable)
- TO
- CC
- BCC
- EMAILSUBJECT or TITLE (as applicable)
- DATESENT or DATECREATED (as applicable)
- DATERECEIVED or DATELASTMOD (as applicable)
- FILENAME

10

3532482

- MD5HASH

- PRIV_TYPE

To the extent the Producing Party believes any metadata field above, if provided, would reveal privileged information, that Party may amend that field to avoid disclosure of privileged information while ensuring that, at minimum, all information required by Fed. R. Civ. P. 26(b)(5) is included. The Producing Party must indicate where such amendment was made by counsel.

If the Requesting Party requires further information to assess the claim of privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within 15 business days of such a request, the Producing Party must either (1) provide the requested information or (2) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

**XIII. PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

No Waiver by Disclosure. If information subject to a claim of attorney-client privilege, work product immunity, or any other privilege or immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or immunity for such information under the law.

If a Party receives a document or information that the Receiving Party knows or has reason to believe may be subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity, the Receiving Party shall: (1) promptly notify the Producing Party (including non-parties responding to a subpoena duces tecum); (2) immediately cease reading the document; (3) upon request from the Producing Party, promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other copies of the documents generated by the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (4) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

11

3532482

If a Party (or subpoenaed non-party) discovers that it has inadvertently produced a document or information that is subject to a clam of attorney-client privilege, work product immunity, or any other applicable privilege or immunity, it shall promptly inform the Receiving Party that the document or information is privileged or otherwise privileged, and indicate whether or not any of the metadata contains any privileged information. Should the metadata for any such document contain privileged information, a replacement load file for that information, complying with Section XII.D., should be provided as soon as possible following, if not contemporaneously with, the notice. Upon receiving such notice, the Receiving Party shall (1) immediately cease reading the document; (2) promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other copies of the documents generated by the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (3) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

At any time a Party is notified that a document or information that is subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity was inadvertently produced, and the document or information is already part of a filing with the Court, the Filing Party shall either withdraw the document or information or the Parties shall agree to brief the issue for the Court pursuant to applicable law, including the Federal Rules of Civil Procedure, this Court's Local Rules of Civil Practice, General or Special Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

**XIV.  <u>THIRD PARTY DOCUMENTS</u>**

A Party that issues a subpoena duces tecum to a non-party (the "Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any and all documents obtained pursuant to a non-party subpoena to the opposing Party. Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

12

3532482

This provision shall not apply to any subpoenas duces tecum issued prior to the entry of this Stipulation and Order.

## XV.  GOOD FAITH

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation and Order. If a Producing Party cannot comply with any material aspect of this Stipulation and Order, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within 15 days after so learning. No Party may seek relief from the Court concerning compliance with this Stipulation and Order unless it has conferred with the other affected Party to the action.

## XVI.  NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Stipulation and Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Stipulation and Order shall be construed to affect the admissibility of any document or data produced pursuant to it. All objections to the admissibility of any document or data are preserved and may be asserted at any time.

## XVII. PROTECTIVE ORDER

Nothing in this Stipulation and Order shall be deemed to limit, modify, or override any provision of any Protective Order which may be entered by the Court.

## XVIII. MODIFICATION

This Stipulation and Order may be modified by a further Stipulation and Order of the Parties or by the Court in the interests of justice or for public policy reasons.

DATED this 19th day of December, 2018.

13

3532482

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By */s/ Jacob B. Lee*
  Daniel P. Struck
  Jacob B. Lee
  Ashlee B. Hesman
  3100 West Ray Road, Suite 300
  Chandler, AZ 85226
  dstruck@strucklove.com
  jlee@strucklove.com
  ahesman@strucklove.com

  Gina G. Winspear
  DENNETT WINSPEAR
  3301 North Buffalo Dr., Suite 195
  Las Vegas, NV 89129
  gwinspear@dennettwinspear.com

  *Attorneys for Defendant CoreCivic, Inc.*

NICHOLS KASTER, PLLP

By */s/ Anna P. Prakash (with permission)*
  Anna P. Prakash
  Matthew H. Morgan
  4600 IDS Center
  80 South Eighth Street
  Minneapolis, MN 55402
  aprakash@nka.com
  morgan@nka.com

  Lance D. Sandage
  SANDAGE LAW, LLC
  1600 Genessee Street, Suite 655
  Kansas City, MO 64102
  lance@sandagelaw.com

  Paul S. Padda
  Joshua Y. Ang
  PAUL PADDA LAW, PLLC
  4560 South Decatur Boulevard, Suite 300
  Las Vegas, NV 89103
  psp@paulpaddalaw.com
  ja@paulpaddalaw.com

14

3532482

Joseph K. Eischens
THE LAW OFFICE OF JOSEPH K. EISCHENS
1321 Burlington Street, Suite 202
North Kansas City, MO 64116
joe@jkemediation.com

Michael Hodgson
THE HODGSON LAW FIRM, LLC
3699 SW Pryor Road
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com

*Attorneys for Plaintiff*

**IT IS SO ORDERED:**

_George Foley Jr._

UNITED STATES MAGISTRATE JUDGE

DATED:__ 12/20/2018 _____

15

3532482

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Paul S. Padda: | psp@paulpaddalaw.com |
| Joshua Y. Ang: | ja@paulpaddalaw.com |
| Lance D. Sandage: | lance@sandagelaw.com |
| Anna P. Prakash: | aprakash@nka.com |
| Matthew H. Morgan: | morgan@nka.com |
| Joseph K. Eischens: | joe@jkemediation.com |
| Michael Hodgson: | mike@thehodgsonlawfirm.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

*/s/ Tamela S. Gation*

16

3532482

## APPENDIX 1: METADATA FIELDS

| FIELD NAME | EXAMPLE/FORMAT | DESCRIPTION |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABD00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with last page of the last attachment. |
| PARENTBEG | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ATTACHBEG | ABC00000004 | The Document ID Number associated with the first page of each unique attachment. |
| ATTACHCOUNT | 1 (Numeric) | The number of attachments to a document |
| CUSTODIAN | Joe Smith | The custodian of a document when first collected. |
| SOURCE | NSDC | The location where the data was collected |
| PGCOUNT | 3 (Numeric) | The number of pages for a document |
| PRODVOLUME | VOL001 | The name of an export volume, whether via FTP, CD, DVD, or HardDrive (vendor assigns) |
| RECORDTYPE | Options: E-Mail, E-Mail Attachments, E-Doc; Hard Copy | The record type of a document |
| NATIVEFILESIZE | Number | The file size, in bytes, of the native document (including embedded attachments) |
| MD5HASH (or equivalent) | | THE MD5 Hash vale or "de-duplication key" assigned to a document. |
| EXTRACTEDTEXT | D:\TEXT\ABC00000001.txt | The path to the full extracted text or OCR of the document. There should be be a folder on the deliverable containing a separate text file per document. These text files should be named with their corresponding bates numbers. Even if the attachment of e-mail file does not have any extracted text during processing, should the producing party OCR the document for their own benefit, that OCR file shall be produced and identified here. |
| CONFIDENTIAL | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced image files. If the document is only produced in native format, this field is to be populated with the designation the native file should have if printed. |
| REDACTED | Options: Yes | Please populate this field for all documents that have a redaction. |
| FILENAME | Document name.pdf | The file name of a document |
| NATIVEPATH | D:\NATIVES\ABC00000009.xls | The relative path to a native copy of a document produced natively |

| FIELD NAME | EXAMPLE/FORMAT | DESCRIPTION |
|---|---|---|
| TITLE | Document1 | The extracted document title of a non-email document. |
| DOCTYPE | Word, Excel, Email, PDF | Type of File |
| FILEEXT | .xls | The file extension of a document. |
| AUTHOR | jsmith | The extracted author metadata of a non-email document.[1] |
| DATECREATED | MM/DD/YYYY | The date the document was created.[2] |
| TIMECREATED | HH:MM | The time the document was created. |
| DATELASTMOD | MM/DD/YYYY | The date the document was last modified. |
| TIMELASTMOD | HH:MM | The time the document was last modified |
| LASTSAVEDBY | Jsmith | The extracted metadata reflecting the last person to save the document. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail address of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the copyee(s) of an e-mail |
| BCC | Joe Smith <jsmith@email.com> | The display name(s) or e-mail address(es) of the blind copyee(s) of an e-mail. |
| EMAILSUBJECT | | The subject line of the e-mail. |
| DATESENT | MM/DD/YYYY | The date the e-mail was sent |
| TIMESENT | HH:MM | The time the e-mail was sent |
| IMPORTANCE | 0 or 1 or 2 | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance). |
| DATERECEIVED | MM/DD/YYYY | The date the document was received. |
| TIMERECEIVED | HH:MM | The time the document was received. |
| FILEPATH | i.e. Joe Smith/E-mail/Inbox | Location of the original document. The source should be the start of the relative path. |
| TIMEZONE | PST, CST, EST, etc. | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at the time of collection. |
| EMAIL CONV INDEX | | ID used to identify and tie together e-mail threads.[3] |

3528136

[1] The Parties acknowledge that the Author field may not actually reflect the author of the document.

[2] The Parties acknowledge that the DATECREATED and TIMECREATED fields may not actually reflect the date and time the file was created, due to the ease of change to those fields and the technical definition of the fields (e.g, the created date and time reflects the date when the file was created in that particular location on the computer or on another storage device location).

[3] The Parties acknowledge that Email Conv Index may or may not be present depending on the email client and server used to compose and transmit the message. The Parties agree to produce the values when present.