Daniel P. Struck
Arizona Bar No. 012377
*(admitted pro hac vice)*
Jacob B. Lee
Nevada Bar No. 012428
Ashlee B. Hesman
Nevada Bar No. 012740
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
jlee@strucklove.com
ahesman@strucklove.com

Gina G. Winspear
Nevada Bar No. 005552
DENNETT WINSPEAR, LLP
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone: (702) 839-1100
gwinspear@dennettwinspear.com

*Attorneys for Defendant CoreCivic, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Kathleen Bliss, on behalf of herself, the Proposed Nationwide Rule 23 Class, and the Proposed Nevada Subclass,<br><br>Plaintiff,<br><br>v.<br><br>CoreCivic, Inc.,<br><br>Defendant. | Case No. 2:18-cv-01280-JAD-GWF<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant CoreCivic, Inc. moves for summary judgment on Plaintiffs' federal and state wiretap claims as untimely under the applicable two-year statutes of limitations. Those claims are time-barred because they accrued more than two years ago, when Plaintiff Kathleen Bliss knew or had a reasonable opportunity to discover CoreCivic's alleged monitoring, interception, recording,

and/or sharing of her telephone calls with her detainee-clients at the Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada. Thus, the Court should dismiss her claims with prejudice.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    RELEVANT FACTS**

1.    Bliss is a private criminal-defense attorney who is licensed and practices law in Nevada. (Dkt. 25, ¶ 12.)

2.    Bliss has approximately 25 years of experience as both a federal prosecutor and a private criminal attorney. (*See* Ex. 1.)

3.    Bliss was a prosecutor in several states and eventually accepted a position in Nevada as an Assistant United States Attorney in the Organized Crime Strike Force of the Department of Justice's Criminal Division. (*Id.*)

4.    In that prosecutorial position, Bliss worked on several cases involving wiretapping issues by law enforcement. *See*, *e.g.*, *U.S. v. Burgos*, No. 2:11–CR–48 JCM (LRL), 2011 WL 867567 (D. Nev. Mar. 10, 2011); *see also*, *e.g.*, *U.S. v. Aguilar*, No. 2:11–CR–00048–JCM–LRL, 2011 WL 1869388 (D. Nev. April 15, 2011).[2]

5.    After 22 years as a federal prosecutor, Bliss went into private practice as a criminal defense attorney, and continued litigating cases involving wiretapping issues. *See*, *e.g.*, *U.S. v. Cobb*, 2:14–CR–00194–APG–NJK, 2015 WL 518543 (D. Nev. Feb. 9, 2015).

---

[1] CoreCivic reserves the right to move for summary judgment on the merits in the event Bliss's claims survive this Motion. *See Antioch Litig. Tr. v. McDermott Will & Emery LLP*, No. 3:09-cv-218, 3:10-cv-156, 2012 WL 5935956, at *1 (S.D. Ohio Nov. 27, 2012) ("[A] district court may permit a second motion for summary judgment, especially where there has been an intervening change in the controlling law, where new evidence has become available or the factual record has otherwise expanded through discovery or where a clear need arises to correct a manifest injustice."); *accord Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 45 n.2 (3d Cir. 2015) (affirming district court's allowance of subsequent motion for summary judgment); *Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010) (same); *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) (holding "the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist"); *see also Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (allowing an initial motion for summary judgment on the issue of exhaustion).

[2] This Court may take judicial notice of pleadings and memoranda in these matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

6. As a criminal-defense attorney, Bliss represented Vinay Bararia in *U.S. v. Bararia*, No. 2:12-cr-236-MMD-GWF (D. Nev.).  (Ex. 2.)

7. On February 21, 2013, Bliss filed a Motion to Require Disclosure of Material Information in *Bararia*.  *See* No. 2:12-cr-236-MMD-GWF, Dkt. 63 (Ex. 3.)

8. In Request No. 16 of that Motion, Bliss requested the Government to produce "[a]ll jail recordings of Defendant obtained by the Government during Defendant's incarceration, **including all privileged communications** received and reviewed."  (*Id*. at 3:6-7) (emphasis added).

9. At the time of that Motion, Bararia was detained at NSDC. *See* No. 2:12-CR-236-MMD-GWF, Dkt. 198 at 11:24-25 & Ex. B to same.

10. Bliss later represented another criminal defendant, Robert Kincade, in *U.S. v. Kincade*, No. 2:15-CR-00071-JAD-GWF (D. Nev.).

11. On October 3, 2016, Bliss filed a Motion to Dismiss for Prosecutorial Delay and Misconduct on behalf of Kincade. *See* No. 2:15-cr-00071-JAD-GWF, Dkt. 130 (Ex. 4.)

12. In that Motion, Bliss argued that the case should be dismissed because, among other reasons, "the government [was] in possession of tape recorded conversations between [the defendant] and his counsel." (*Id*. at 2:16-18.)

13. Bliss further stated:

> On **June 27, 2016**, the government provided certain supplemental discovery. **Included in that discovery was a compact disk containing hundreds, if not thousands, of recordings of telephone calls made by Kincade from the Nevada Southern Detention Center in Pahrump, Nevada ("NSDC"). These calls had been recorded by NSDC** and delivered to the U.S. Attorney's Office. **Among other conversations, the disk includes recordings of Kincade's telephone calls to defense counsel Kathleen Bliss.**

(*Id*. at 10:18-28, 11:1–5) (emphasis added).

14. On December 12, 2016, Bliss filed a Motion for Order Compelling Disclosure of Status Report Regarding Government Compelled Telephone Calls and of Grand Jury Transcripts on behalf of Kincade. *See* No. 2:15-cr-00071-JAD-GWF, Dkt. 216 (Ex. 5.)

1    15.   Bliss stated in that Motion that, beginning on June 27, 2016, "the government produced a cascade of telephone calls, which included 13 telephone calls by [the defendant] to his attorneys." (*Id*. at 2:25-3:2.)

2    16.   CoreCivic owns and operates NSDC under an agreement with the United States Marshals Service. (Dkt. 25, ¶¶ 5 & 6.)

3    17.   On July 12, 2018, Bliss filed her original Complaint raising claims under the federal and Nevada wiretap statutes, and alleged that CoreCivic "records confidential attorney-client communications" at its facilities without the consent of the attorneys or detainees. (Dkt. 1 at 3, ¶¶ 16-17.)

4    18.   On September 28, 2018, Bliss filed an Amended Complaint, alleging that her attorney-client calls had been monitored, intercepted, recorded, and/or shared with law enforcement agencies since "before July 2016 and continuing into 2018," in violation of the federal and Nevada wiretap statutes. (Dkt. 25, ¶¶ 16–17 & 31.)

5    19.   Bliss further alleges that she "has had numerous conversations with her clients, both telephonically and in person[,] while her clients were detained at [NSDC]"; that she "was aghast to learn that her conversations with a client in [NSDC] had been listened to"; and that "[s]he promptly made the government and later, the court aware" of the same. (Dkt. 25, at ¶¶ 17, 25.)

6    20.   As an "example," Bliss alleges: "Plaintiff received calls from more than one client in the Nevada Southern Detention Center during the statutory period, including in the latter half of 2016." (Dkt. 25, ¶ 17.)

7    21.   Bliss seeks damages and statutory penalties for these alleged violations, including actual damages or liquidated damages of $100/day (but not less than $1,000), punitive damages, and her costs and fees. (Ex. 6 at 4:2–16.)

**II.   LEGAL ARGUMENT**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986) (citing Fed. R. Civ. P. 56). "Summary

judgment has, as one of its most important goals, the elimination of waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135-36 (9th Cir. 1975), *disapproved of on other grounds by*, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990)). Because the evidence shows that Bliss's claims are time-barred under the federal and Nevada wiretap statutes, CoreCivic is entitled to summary judgment.

### A.   The Federal Wiretap Act Claim is Barred Under 18 U.S.C. § 2520(e).

The Federal Wiretap Act requires that civil actions for violations be "commenced [not] later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). A "reasonable opportunity" is one "as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *See Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002); *see also Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 n.1 (9th Cir. 1995) (holding the plaintiff "had a reasonable opportunity to discover the taped conversation when it was admitted at his trial"); *Jones v. Shields*, 107 F. App'x 725, 727 (9th Cir. 2004) (same). Thus, a plaintiff's subjective state of mind—i.e., whether she was actually aware of the alleged violation—is irrelevant. *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998); *see also In re Trilegiant Corp., Inc.*, 11 F.Supp.3d 82, 106 (D. Conn. 2014) (finding "[A]n objective standard is used to impute knowledge to the victim when sufficient 'storm clouds' are raised to create a duty to inquire. . . . [I]mportantly, the storm warnings 'need not detail every aspect of the alleged fraudulent scheme,' but must suggest to a person of ordinary intelligence the probability of fraudulent activity.").

In *Davis*, an employer turned over to police wiretap evidence of his employee selling drugs from his work office. 149 F.3d at 616. The employee knew in May 1990 that police had a tape of his conversations. *Id.* at 616, 618. In September 1992, the employee sued the employer for violation of the Federal Wiretap Act. *Id.* at 618. The employee acknowledged that he knew something had been taped, but argued it might have been a non-telephonic conversation. *Id.* He further argued he did not know "for sure until September 12, 1990" when an officer testified that a tape recording existed. *Id.* The Seventh Circuit held that the May 1990 "revelation to [the

1    employee] was at least enough to put him on inquiry notice that his rights might have been invaded"
2    and gave him "reason to know that something was afoot." *Id.*  Because the employee filed suit
3    more than two years after that revelation, the claim was time-barred. *Id.*

4    Similarly, in *Sparshott*, the plaintiff alleged that, from the "very start of her relationship
5    with Smith in 1993," she had made "successive discoveries not only of Smith's wiretapping but
6    also of other similar intelligence gathering." 311 F.3d at 429.  Further, "she also received outside
7    warnings" of Smith's wiretapping. *Id.*  In March 1997, Smith confronted the plaintiff with an
8    audiotape of a phone call. *Id.* at 428.  Exactly two years later, the plaintiff sued Smith for violations
9    of the Federal Wiretap Act. *Id.*  The district court ruled in favor of the plaintiff, and Smith appealed,
10   arguing that the claims were time-barred. *Id.* at 428.  On appeal, the D.C. Circuit reversed. *Id.* at
11   431.  The court held that a person need not actually "discover or be aware of the violation; the
12   question is whether 'the person had a reasonable opportunity to discover the wiretapping.'" *Id.* at
13   429.  The court further held that "Sparshott had evidence that Smith had been wiretapping her both
14   at home and at work, and reasonable inquiry would have uncovered the whole scheme." *Id.* at 430.

15   Just as in *Davis* and *Sparshott*, where the plaintiffs had reason to believe something was
16   afoot and a reasonable opportunity to discover the alleged wiretapping, the evidence here shows
17   that Bliss likewise had inquiry notice concerning an alleged wiretap violation as early as February
18   21, 2013 based on her discovery request in *Bararia*.  On that date, she requested "[a]ll jail
19   recordings of Defendant obtained by the Government during Defendant's incarceration, including
20   **all privileged communications** received and reviewed." *See U.S. v. Bararia*, No. 2:12-CR-236-
21   MMD-GWF (D. Nev.) (emphasis added).  (*See supra*, Section I, ¶ 8.)  Bliss would not have made
22   such a specific request for privileged communications without an alleged reason to believe
23   something was afoot.

24   Further, the record shows that Bliss had another reasonable opportunity to discover
25   CoreCivic's alleged wiretap violations on June 26, 2016, when she received discovery from the
26   prosecution in *Kincade* in the form of a compact disc containing recordings of telephone calls made
27   by the defendant from NSDC.  (*See supra,* Section I, ¶¶ 14, 15.)  Bliss alludes to this incident in
28   the Amended Complaint as an "example" of CoreCivic's wiretap violations, alleging that the

3539620                                    6

1  recordings of her conversations with detainee-clients at NSDC began "since before July 2016."
2  (Dkt. 25, at ¶ 16.)

3  On this record, it cannot be disputed that Bliss had both inquiry notice and a reasonable
4  opportunity to discover CoreCivic's alleged monitoring, intercepting, recording, and/or sharing of
5  her phone calls with her clients at NSDC as early as February 21, 2013, but no later than June 26,
6  2016. On either of those dates, she had a reasonable opportunity to discover the alleged wiretap
7  violations regardless of when she actually knew of them. *See*, *e.g., Andes v. Knox*, 905 F.2d 188,
8  189 (8th Cir. 1990) (holding that the cause of action accrues when the claimant has a reasonable
9  opportunity to discover the violations, not when she discovers the true identity of the violator or all
10 the violations); *Pringle v. Schleuter*, 388 F. App'x 449, 450 (5th Cir. 1990) (holding that the
11 "limitation period begins to run once the plaintiff has enough notice as would lead a reasonable
12 person to either sue or launch an investigation" and "the statute of limitations does not require the
13 claimant to have actual knowledge of the violation; it demands only that the claimant have had a
14 reasonable opportunity to discover it"); *Kreish v. Michigan Bell Tell. Co.*, 57 F.3d 1069, 1071 (6th
15 Cir. 1995) (finding that the "two-year period for filing these types of claims begins when there is a
16 reasonable opportunity to discover the alleged interception"). Because Bliss filed her original
17 Complaint more than two years after both dates, her federal wiretap claim is time-barred.

18 **B.    The Nevada Wiretap Act Claim is Also Time-Barred.**

19 Although the Nevada Wiretap Act ("Nevada Act") is silent as to a limitations period, an
20 "[a]ction upon a statute for penalty or forfeiture" must be commenced within two years. *See* NRS
21 § 11.190(4)(b). Because Bliss seeks the statutory penalties provided by the Nevada Act (*see* NRS
22 § 200.690) and asserts a two-year statutory period for the Nevada wiretap claim (*see* Ex. 7, at 4:7–
23 8), the two-year statute of applications under NRS § 11.190(4)(b) applies. *See*, *e.g.*, *Edwards v.*
24 *Emperor's Garden Rest.*, 130 P.3d 1280, 1286-87 (Nev. 2006) (finding that because the Telephone
25 Consumer Protection Act "imposes statutory penalties for injuries caused by its violation, NRS
26 11.190 imparts a two-year limitations period").

27 Further, the discovery rule also applies to a Nevada wiretap claim. *See Levin v. Red Rock*
28 *Fin. Servs., LLC*, No. 70006, 2017 WL 519414 at *n. 2 (Nev. App. Jan. 30, 2017) (unpublished

1  order) (holding the discovery rule applies to plaintiff's Nevada wiretap act claims); *accord Bemis*
2  *v. Estate of Bemis*, 967 P.2d 437, 440 n.1 (Nev. 1998) ("In dealing with statutes that do not specify
3  when a cause of action accrues, we have held that the discovery rule would apply."). "If
4  uncontroverted evidence demonstrates that a plaintiff either discovered or should have discovered
5  the facts giving rise to the cause of action, the cause may be dismissed on statute of limitations
6  grounds." *Kancilia v. Claymore and Dirk Ltd. P'ship.*, No. 61116, 2014 WL 3731862, at *1 (Nev.
7  2014) (citing *Bemis*, 967 P.2d at 440).

8      For the same reasons that Bliss had inquiry notice and a reasonable opportunity to discover
9  CoreCivic's alleged federal wiretap violations, her Nevada wiretap claim is also barred by the
10  applicable two-year statute of limitations under state law. Bliss either knew or should have
11  discovered the alleged violations as early as February 21, 2013, but no later than June 26, 2016.
12  *See Eamon v. Martin*, No. 67815, 2016 WL 917795, at *1 (Nev. App. Mar. 4, 2016) (finding that
13  a "person is put on inquiry notice when he or she should have known of facts that would lead an
14  ordinarily prudent person to investigate the matter further") (internal quotation and citation
15  omitted); *Winn v. Sunrise Hosp. & Medical Ctr.*, 277 P.3d 458, 463 (Nev. 2012) (holding plaintiff
16  obtained inquiry notice of a possible claim when he received medical records documenting
17  potential negligence); *Crabb v. Harmon Enter., Inc.*, No. 60634, 2014 WL 549834, at *3 (Nev.
18  Feb. 10, 2014) (finding plaintiff had inquiry notice when she received a diagnosis "alert[ing] her to
19  a potentially negligent cause of her injury").

20  **III.   CONCLUSION**

21      For the foregoing reasons, CoreCivic requests that this Court grant its Motion for Summary
22  Judgment and dismiss Bliss's claims with prejudice.

23
24
25
26
27  / / /
28  / / /

DATED this 25th day of January, 2019.

                              STRUCK LOVE BOJANOWSKI & ACEDO, PLC

                              By /s/ Jacob B. Lee
                                  Daniel P. Struck
                                  Jacob B. Lee
                                  Ashlee B. Hesman
                                  3100 West Ray Road, Suite 300
                                  Chandler, AZ 85226
                                  dstruck@strucklove.com
                                  jlee@strucklove.com
                                  ahesman@strucklove.com

                                  Gina G. Winspear
                                  DENNETT WINSPEAR
                                  3301 North Buffalo Dr., Suite 195
                                  Las Vegas, NV 89129
                                  gwinspear@dennettwinspear.com

                                  *Attorneys for Defendant CoreCivic, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Paul S. Padda: | psp@paulpaddalaw.com |
| Joshua Y. Ang: | ja@paulpaddalaw.com |
| Lance D. Sandage: | lance@sandagelaw.com |
| Anna P. Prakash: | aprakash@nka.com |
| Matthew H. Morgan: | morgan@nka.com |
| Joseph K. Eischens: | joe@jkemediation.com |
| Michael Hodgson: | mike@thehodgsonlawfirm.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Jacob B. Lee

3539620

10