**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KATHLEEN BLISS, *Plaintiff-Appellant*, | No. 19-16167 |
| v. | D.C. No. 2:18-cv-01280-JAD-GWF |
| CORECIVIC, INC., *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted June 9, 2020
San Francisco, California

Filed October 27, 2020

Before: Eric D. Miller and Danielle J. Hunsaker, Circuit
Judges, and Patrick J. Schiltz,[*] District Judge.

Opinion by Judge Hunsaker

---

[*] The Honorable Patrick J. Schiltz, United States District Judge for
the District of Minnesota, sitting by designation.

BLISS V. CORECIVIC, INC.

## SUMMARY[**]

### Wiretap Act

The panel affirmed in part and reversed in part the district court's grant of summary judgment, on statute of limitations grounds, on a criminal defense attorney's claims of violations of the Wiretap Act by CoreCivic, Inc., in the alleged recording of privileged telephone calls between the attorney and clients who were detained in CoreCivic's detention facility in Nevada.

A plaintiff must bring an action under the Wiretap Act no "later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." The panel held that "the violation" triggering the statute of limitations was each individual call that CoreCivic recorded, rather than CoreCivic's recording protocol as a whole, and CoreCivic was entitled to summary judgment only as to calls that the attorney had a reasonable opportunity to discover were recorded more than two years before she filed suit.

The panel affirmed the district court's determination that the statute of limitations was first triggered when the attorney received discovery in June 2016 that contained recordings of her privileged telephone calls, and the district court's holding that the attorney's claims were untimely to the extent they were based on earlier interceptions. The panel held that to the extent the attorney's claims were based on calls recorded after June 2016, the timeliness of such

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

claims depended on when she first had a reasonable opportunity to discover that such calls were recorded. The panel reversed in part and remanded for the district court to conduct this analysis.

---

## COUNSEL

Anna P. Prakash (argued), Matthew H. Morgan, and Charles A. Delbridge, Nichols Kaster, PLLP, Minneapolis, Minnesota; Paul S. Padda and Joshua Y. Ang, Paul Padda Law, PLLC, Las Vegas, Nevada; for Plaintiff-Appellant.

Nicholas D. Acedo (argued), Daniel P. Struck, and Kevin L. Nguyen, Struck Love Bojanowski & Acedo, PLC, Chandler, Arizona; for Defendant-Appellee.

---

## OPINION

HUNSAKER, Circuit Judge:

Criminal defense attorney Kathleen Bliss sued CoreCivic, Inc. under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2523, and Nevada's wiretap act, Nev. Rev. Stat. §§ 200.610–200.690 (collectively the "Wiretap Act" or the "Act").[1] Bliss alleged CoreCivic unlawfully recorded privileged telephone calls between herself and her clients who were detained in CoreCivic's detention facility in Nevada. The question we must decide is whether "the

---

[1] The Nevada legislature amended Nevada's Act to conform with the Federal Act, with a few exceptions inapplicable here. *See Lane v. Allstate Ins. Co.*, 969 P.2d 938, 940 (Nev. 1998).

violation" triggering the statute of limitations is CoreCivic's call-recording protocol as a whole or each individual call that it recorded. Because we conclude it is the latter, we reverse in part the district court's grant of summary judgment in favor of CoreCivic and remand for further proceedings.

## I.     BACKGROUND

### A.  CoreCivic's Interceptions

Bliss practices criminal law in Nevada. On June 27, 2016, she received discovery from the government in her client Robert Kincade's case, which included recordings CoreCivic made of privileged telephone calls between Bliss and Kincade. The government provided additional discovery that also contained calls recorded on July 18 and 19, 2016. For various reasons, Bliss did not review the government's discovery and uncover the telephone recordings until late September 2016. Thus, she continued to communicate by telephone with Kincade, who remained in CoreCivic's Nevada facility, after receiving the government's June and July productions. When Bliss finally did review the discovery in late September, she learned that CoreCivic recorded privileged telephone calls between her and Kincade at least through July 19, 2016.

Soon after Bliss learned her calls with Kincade were recorded, she "pushed back" by telling the government and the court about CoreCivic's interceptions. Apparently believing her "push[] back" would stop CoreCivic's recording practice, Bliss resumed telephone communications with her clients detained at CoreCivic's Nevada facility. Bliss's actions did not have the intended result, however, and Bliss alleges that CoreCivic continued

to record calls between attorneys and their clients at the Nevada facility through February 2019.

## B. Bliss's Lawsuit for Wiretap Act Violations

More than two years after receiving the initial discovery containing recordings of her telephone calls, on July 12, 2018, Bliss sued CoreCivic in federal court on behalf of a purported nationwide class and Nevada subclass of similarly-situated attorneys for violation of the Wiretap Act. Bliss alleged, among other things, that CoreCivic knowingly recorded her privileged telephone calls with her clients after July 12, 2016.

CoreCivic moved for summary judgment arguing Bliss's claims were barred by the Act's two-year statute of limitations because her first reasonable opportunity to discover the alleged violation was no later than June 27, 2016, when she received the government's first production that included CoreCivic's telephone recordings. The district court noted a lack of guidance from our circuit about the meaning of the phrase "the violation," which is the triggering event for the Wiretap Act's limitation period, and it heavily relied on the D.C. Circuit's reasoning in *Sparshott v. Feld Entertainment, Inc.*, 311 F.3d 425 (D.C. Cir. 2002). There, the plaintiff brought claims under the Wiretap Act after a co-worker with whom she was in a romantic relationship recorded her phone calls and conducted other surveillance over an extended period. *Id.* at 427–28. The D.C. Circuit rejected the plaintiff's attempt to distinguish between types of wiretapping for purposes of the statute of limitations, holding that the plaintiff's discovery of some surveillance activities was enough to give the plaintiff a reasonable opportunity to discover the extent of the overall scheme. *Id.* at 430–31.

The district court noted that, as in *Sparshott*, Bliss's claims arose from a pattern of conduct: CoreCivic had a protocol under which it recorded all telephone calls in the same manner and from the same location. And the district court concluded that the Act's statute of limitations began running for all calls recorded under CoreCivic's protocol when the government first produced discovery that included recorded telephone calls because this discovery gave Bliss her first reasonable opportunity to learn of CoreCivic's wiretapping activities. Because the district court concluded that the statute of limitations was triggered for all of CoreCivic's recording activity, it held Bliss's claims were time barred in their entirety because she filed suit over two years after receiving the initial discovery on June 27, 2016, and it granted summary judgment for CoreCivic. Bliss timely appealed.

We have jurisdiction to review the district court's summary-judgment decision under 28 U.S.C. § 1291, and we review the decision and rulings on the appropriate statute of limitations de novo. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011); *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan*, 82 F.3d 912, 915 (9th Cir. 1996).

## II.    DISCUSSION

The Wiretap Act provides a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [18 U.S.C. §§ 2510–2523]." 18 U.S.C. § 2520(a). A plaintiff must bring an action under the Act no "later than two years after the date upon which the claimant first has a reasonable opportunity to discover *the violation*." *Id.* § 2520(e) (emphasis added). The parties dispute the meaning of this triggering event—"the violation." Bliss argues "the violation" refers to each separate interception, or recorded

call, and that multiple interceptions cannot constitute a single violation. CoreCivic urges us to construe "the violation" to mean the overall wiretapping scheme or practice, not each discrete recording.

## A. The Meaning of "the Violation" under the Act

In interpreting the disputed phrase, "[w]e begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017). While the Act identifies what is violative conduct, it does not separately define the meaning or scope of "the violation" that triggers the statute of limitations. *See* 18 U.S.C. § 2510. Thus, to ascertain the reach of this phrase we consider the public understanding of the words at the time of enactment, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020), "as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also Maracich v. Spears*, 570 U.S. 48, 65 (2013) (stating "an interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning"); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (describing statutory interpretation as a "holistic endeavor").

It will come as no surprise that when Congress enacted the Act's statute of limitations in 1986, "violation" was commonly defined in the singular as "*the* act of violating" or "*a* breach or infringement, as of a law or agreement." Random House College Dictionary 1469 (Revised ed. 1982) (emphasis added). One source made this point even more explicit, defining "violation" as "[i]nfringement or breach . . . of some principle or standard of conduct or procedure, as an oath, promise, law, etc.; *an instance of this*." Compact Edition of the Oxford English Dictionary 3635 (1971) (emphasis added). These common definitions are consistent

with the prevailing legal definition. *See* Black's Law Dictionary 1408 (5th ed. 1979) (defining "violation" as "breach of right, duty or law").

Thus, as it is clear that the statute is referring to a singular violative event, the material question is how the Act defines violative conduct, i.e., whether it prohibits individual acts, or practices and schemes that result in unlawful acts. Considering "the violation" in the larger context of the Act indicates that this phrase refers to each individual interception (or other action) that violates the Act, not overall practices or schemes that result in many individual interceptions. As stated above, the Act prohibits the interception of certain types of communication. 18 U.S.C. § 2520(a). "Intercept" is defined as "the aural or other acquisition of the contents of *any* wire, electronic, or oral *communication* through the use of any electronic, mechanical, or other device." *Id.* § 2510(4) (emphasis added). Anyone who "intentionally uses" a "device to intercept *any* oral *communication*" under circumstances specified in the Act is subject to punishment. *Id.* § 2511(1)(b) (emphasis added). And a civil cause of action is available to anyone "whose wire, oral, or electronic *communication* is intercepted." *Id.* § 2520(a) (emphasis added).

The plain import of these definitions is that each interception is a discrete violation. *Cf. Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991) (holding "[t]he text of the Wiretap[] Act plainly indicates, and its purpose necessitates, that a new and discrete cause of action accrue[s] under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it"); *see, e.g.*, *Allen v. Brown*, 320 F. Supp. 3d 16, 37 (D.D.C. 2018) (interpreting *Sparshott* as providing

authority that "each interception is a discrete violation," triggering its own limitations period because the court dismissed the federal wiretap claim where there were no "incidents of wiretapping which occurred within two years of the plaintiffs' filing suit") (quoting *Sparshott*, 311 F.3d at 431); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 647, 656 (D. Ariz. 2004) (denying a motion to dismiss because "each violation . . . gives rise to a discrete cause of action" and violations may have occurred within the limitations period) (citation and quotation marks omitted). Construing "the violation" to refer to a larger pattern or scheme that results in multiple interceptions is inconsistent with the Act's multiple references to "communication" in the singular. There simply is no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme.

CoreCivic argues the Act's statutory-damages provision indicates that the overall scheme, and not individual acts taken as part of that scheme, is the relevant violation. The Act provides for statutory damages "of $100 a day for each day of violation or $10,000," whichever is greater. 18 U.S.C. § 2520(c)(2)(B). We do not see how this provision necessitates interpreting "the violation" to refer to an overall pattern or scheme that results in multiple violations. *But see DirecTV, Inc. v. Webb*, 545 F.3d 837, 845 (9th Cir. 2008) (noting the statutory-damages provision "suggests" that each signal interception does not constitute a separate violation because it "contemplat[es] a single violation . . . over many days").[2] The statutory-damages provision clarifies that

---

[2] The defendant in *Webb* possessed 57 pirate-access devices, but because his system as a whole "was capable of just one signal interception no matter how many devices Webb attached to it," we held

violations are remedied on a per-day basis, not a per-occurrence basis. That is, if multiple violations occur in a single day, only one damage assessment is made. And were a single violation to extend over multiple days, the number of assessments would be based on the number of days the violation continued. This provision does not address the question before us, nor does it indicate, as CoreCivic suggests, that a course of conduct leading to multiple interceptions must be treated as a single violation.

In sum, we conclude that the only reasonable interpretation based on both the text and context of the Act is that "the violation" refers to each separate interception, whether the interception is a singular event or part of a larger pattern of conduct. *See Maracich*, 570 U.S. at 65.

## B. Accrual of Bliss's Claims

Although the district court incorrectly construed "the violation" to refer to a scheme or practice in this case, it correctly determined that the Act's two-year statute of limitations was first triggered when Bliss received discovery in June 2016 that contained recordings of her privileged telephone calls. As stated above, the Wiretap Act bars a claim if the plaintiff files suit more than "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

---

that conduct to constitute one violation, not 57. *Webb*, 545 F.3d at 845. We did not consider how to evaluate interceptions separated in time. *See id.* "[W]ell-reasoned dicta is the law of the circuit, but we are not bound by a prior panel's comments made casually and without analysis, uttered in passing without due consideration of the alternatives, or done as a prelude to another legal issue that commands the panel's full attention." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (citations and alterations omitted).

Here, the undisputed facts establish that Bliss had such notice of recordings made before June 27, 2016, when she received discovery from the government on that date that included recorded calls. Although Bliss did not uncover the recordings until approximately three months later, accrual of the limitations period is not based on when the plaintiff actually discovers a violation but when the plaintiff first had a "reasonable opportunity" to do so. *Id.* Therefore, we affirm the district court's holding that Bliss's claims are untimely to the extent they are based on interceptions that occurred before June 27, 2016.

However, the record indicates that Bliss continued communicating by telephone with her clients detained in CoreCivic's Nevada facility after June 27, 2016. To the extent her claims are based on calls that were recorded after this date, the timeliness of such claims depends on when she first had a reasonable opportunity to discover that such calls were recorded. 18 U.S.C. § 2520(e). Because the district court did not address when Bliss first had a reasonable opportunity to discover that calls occurring after June 27, 2016, were being recorded, we decline to reach this issue and remand for the district court to conduct this analysis. We do note, however, that to the extent Bliss's claims are based on calls that were recorded less than two years before she filed suit on July 12, 2018, they are not time barred.[3]

---

[3] The parties agree that the conclusion we reach should apply equally to Bliss's federal and state-law claims. Although the global statute of limitations governing statutory actions under Nevada law does not use the term "the violation," *see* Nev. Rev. Stat. § 11.190(4)(b), the remainder of our analysis applies with equal force to that provision. Nevada's limitations period, like the federal Act's, begins to run when the plaintiff "knows or should know of facts" supporting a cause of action. *See Bemis v. Estate of Bemis*, 967 P.2d 437, 440 & n.1 (Nev.

### III. CONCLUSION

Each interception of Bliss's privileged telephone calls is a separate violation of the Act. Therefore, the statute of limitations is triggered anew for each call that CoreCivic recorded, and CoreCivic is entitled to summary judgment only as to calls that Bliss had a reasonable opportunity to discover were recorded more than two years before she filed suit.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.** Each party shall bear its own costs on appeal.

---

1998) (emphasis omitted). And Nevada's wiretap act likewise suggests that each interception gives rise to a discrete claim. *See, e.g.*, Nev. Rev. Stat. § 200.620(1) ("[I]t is unlawful for any person to intercept or attempt to intercept any wire *communication* . . . ." (emphasis added)); *id.* § 200.650 ("[A] person shall not intrude upon the privacy of other persons by surreptitiously listening to . . . any private *conversation* engaged in by the other persons . . . ." (emphasis added)); *id.* § 200.690 (parallel damages provision).