UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Kathleen Bliss, on behalf of herself, the Proposed Nationwide Rule 23 Class, and the Proposed Nevada Subclass,<br><br>    Plaintiff<br><br>v.<br><br>CoreCivic, Inc.,<br><br>    Defendant | Case No.: 2:18-cv-01280-JAD-EJY<br><br>**Order Denying Motion to Dismiss Second Amended Complaint**<br><br>[ECF No. 129] |

On her own behalf and on behalf of a proposed nationwide class and a proposed Nevada subclass, criminal-defense attorney Kathleen Bliss sues CoreCivic, Inc., alleging that the company—which owns and operates Nevada Southern Detention Center (NSDC)—recorded privileged calls between her and her incarcerated clients in violation of the Federal and Nevada Wiretap Acts.[1] In 2019, finding Bliss's claims barred by both acts' two-year statutes of limitations, which I found were triggered when she discovered the recording scheme, I granted summary judgment for CoreCivic.[2] Bliss appealed, and the Ninth Circuit affirmed in part and reversed in part, holding that each recorded call triggered the statute of limitations anew, so any alleged wiretap-act violations prior to June 27, 2016, were time-barred but subsequent ones aren't necessarily so.[3] Following remand, Bliss amended her complaint for a second time.[4] CoreCivic moves to dismiss that second-amended complaint, arguing that Bliss fails to state a

---

[1] ECF No. 128 (second-amended complaint).
[2] ECF No. 93.
[3] ECF No. 109; ECF No. 110.
[4] ECF No. 117; ECF No. 128.

claim and should not be able to recover punitive damages, and that this court lacks personal jurisdiction over claims by the putative nationwide-class members.[5] Because I find Bliss's claims for relief and punitive damages plausible and that this court has jurisdiction over the putative nationwide-class claims, I deny the motion in full.[6]

**Discussion**

**I.  This court has jurisdiction over Bliss's nationwide-class claims.**

Citing to the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, CoreCivic argues that this court lacks specific personal jurisdiction over it for purposes of the putative nationwide-class-members' claims.[7] In *Bristol-Myers*, a number of plaintiffs—a vast majority of whom were not California residents—brought a state-law mass-tort action against an out-of-state drug manufacturer in California state court.[8] The state court denied the drug manufacturer's motion to quash service of summons, which asserted the lack of personal jurisdiction on the nonresidents' claims, and the Supreme Court reversed.[9] The Court reasoned that federalism concerns counseled against *state* courts exercising personal jurisdiction over nonresident defendants for nonresident plaintiffs' out-of-state-injury claims in a mass-tort action.[10] It expressly left "open" whether the same restrictions apply to

---

[5] ECF No. 129; ECF No. 138.

[6] Although I find Bliss's claims plausible and find that this court has personal jurisdiction over all of her claims at this early stage of proceedings, this order in no way prejudges the outcome of a motion for class certification, which has not yet been filed.

[7] ECF No. 129 at 23–24.

[8] *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1777–78 (2017).

[9] *Id.* at 1778–79, 1784.

[10] *Id.* at 1780–81.

*federal* courts.[11]  And in her dissent, Justice Sonia Sotomayor recognized that "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum [s]tate seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."[12]

Since *Bristol-Myers*, the lower courts have taken divergent approaches to the class-action question the Court left unanswered, creating intra-circuit and even intra-district splits.[13]  The Ninth Circuit has not addressed the issue, so it is one of first impression for this court.  A minority of district courts have concluded that *Bristol-Myers* effectively hamstrings nationwide class actions and compels the dismissal of any nonresidents' claims whose injuries do not arise out of the defendant's forum-state contacts.[14]  But the Seventh Circuit and a majority of district courts—including another judge in this district[15]—have held that *Bristol-Myers* is cabined to state-law mass-tort actions, which involve only named plaintiffs, each of whom have personalized injuries and separate damage claims.[16]  In these courts' view, unnamed class members are "more like nonparties"[17] and "apply[ing] *Bristol-Myers* to [their] claims in a nationwide class action . . . would limit [class] certification to only those states where the

---

[11] *Id.* at 1784.

[12] *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

[13] *Compare, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1012–13 (S.D. Cal. 2020) *with Massaro v. Beyond Meat, Inc.*, 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1080 (S.D. Cal. 2020).

[14] *See Massaro*, 2021 WL 948805, at *11 (collecting cases).

[15] *Krogstad v. Nationwide Biweekly Admin., Inc.*, 2020 WL 4451035, at *4 (D. Nev. Aug. 3, 2020).

[16] *Id.*; *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020).

[17] *Mussat*, 953 F.3d at 448.

defendant is subject to general personal jurisdiction"[18] and "could lead to duplicative nationwide class actions if the defendants hailed from different states."[19]  These courts also reason that unlike the procedural rules applicable in the mass-tort context the *Bristol-Myers* Court considered, the heightened due-process safeguards in Federal Rule of Civil Procedure (FRCP) 23 are sufficient to protect the interests of class-action defendants.[20]

      I find this majority analysis persuasive and I adopt it.  *Bristol-Myers* involved a state court applying one state's tort laws to hundreds of named out-of-state plaintiffs' out-of-state injuries.  The federalism concerns that animated the Supreme Court in that case are not replicated here because the only named plaintiff is a resident of Nevada who alleges injuries caused by the defendant's actions in Nevada and invokes this federal court's federal-question jurisdiction under the Federal Wiretap Act.  And I agree with the majority of district courts that FRCP 23's numerosity, commonality, typicality, adequacy, predomination, and superiority requirements are sufficient to protect class-action defendants' due-process rights.  I also find it an unlikely and impracticable result of *Bristol-Myers*—which did not decide whether its rule would apply in federal court or in class actions—to require federal courts to conduct specific-jurisdiction analyses for unnamed class members' claims and dismiss them long before any class has been certified.  And it goes against principles of judicial efficiency to dismiss the nationwide class members at this stage, only to cause the filing of duplicate and parallel class actions based on the same facts and questions of federal law in a federal court where CoreCivic is subject to general

---

[18] *Massaro*, 2021 WL 948805, at *11.

[19] *Krogstad*, 2020 WL 4451035, at *4.

[20] *See, e.g., id.*; *see also* Fed. R. Civ. P. 23.

4

personal jurisdiction. So I deny CoreCivic's motion to dismiss for want of personal jurisdiction the putative nationwide-class-members' claims.

## II. Bliss has stated plausible claims for violations of the Wiretap Acts.

CoreCivic also moves to dismiss Bliss's complaint for failure state a claim.[21] Federal pleading standards require plaintiffs to plead enough factual detail to "state a claim to relief that is plausible on its face."[22] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"[23]; plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[24] The court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth, and resolve all factual disputes in the plaintiff's favor.[25] A complaint that fails to meet this standard must be dismissed.[26]

I find that Bliss has stated colorable claims for violations of the Federal and Nevada Wiretap Acts. The Federal Wiretap Act makes unlawful the (1) intentional (2) interception of a (3) "wire, oral, or electronic communication" (4) unless the circumstances establish an exception.[27] The Nevada Wiretap Act, which was amended to "conform" with the federal act,[28]

---

[21] ECF No. 129.

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[25] *Iqbal*, 556 U.S. at 678–79.

[26] *Twombly*, 550 U.S. at 570.

[27] 18 U.S.C. § 2510 et seq.

[28] *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1146 (9th Cir. 2020) (citing *Lane v. Allstate Ins. Co.*, 969 P.2d 938, 940 (Nev. 1998)); *see also Sharpe v State*, 350 P.3d 388, 392 (Nev. 2015). The analysis in this order primarily discusses the federal statute, but because of the federal and state wiretap acts' effective coextensiveness, it applies with equal force to the Nevada statute.

similarly prohibits any (1) unconsented (2) intercept or attempt to intercept (3) a wire communication (4) unless the circumstances establish an exception.[29] CoreCivic argues that there was no intercept under either Wiretap Act because of the statutory business-use and law-enforcement exceptions, if there was an intercept it was unintentional, and that Bliss either had no reasonable expectation of privacy or consented to the interceptions.[30]

### A. Bliss has plausibly alleged intent.

The intent element in the Federal Wiretap Act is met if the act is "done on purpose," even if that purpose was not nefarious and the actor was unaware that the use was unlawful.[31] In other words, the actor's motive is irrelevant to a finding of intentionality; the plaintiff need only plead that the act was not a mistake.[32] And FRCP 9(b) permits plaintiffs to plead intent and malice generally.[33] Bliss's second-amended complaint repeatedly asserts that CoreCivic "knowingly," "willfully," and "intentional[ly]" intercepted attorney-client communications, and that it did so despite Bliss's objections, numerous other lawsuits based on similar facts, "admit[ing] in other litigation that there is no legitimate reason to record calls between attorneys and their clients," and being "under cease and desist orders in Kansas . . ." for the same conduct.[34] Bliss's allegations are more than enough to plead intentionality on CoreCivic's part.[35]

---

[29] Nev. Rev. Stat. § 200.620, et seq.

[30] ECF No. 129.

[31] *United States v. Christensen*, 828 F.3d 763, 774–75 (9th Cir. 2015) (cleaned up).

[32] *Id.*

[33] Fed. R. Civ. P. 9(b).

[34] ECF No. 128 at ¶¶ 22–23, 30, 34–38, 68–69, 47, 75, 81, 89.

[35] These allegations are also sufficient to support a prayer for punitive damages under both the Federal and Nevada Wiretap Acts. The state statute authorizes punitive damages for "willful[] and knowing[]"violations of the law, Nev. Rev. Stat. § 200.690, and the federal act states that punitive damages are available if the defendant "acted wantonly, recklessly, or maliciously." *Jacobson v. Rose*, 592 F.2d 515, 520 (9th Cir. 1978). As alleged by Bliss, CoreCivic's

### B. Bliss has plausibly alleged an interception.

Under the federal act, an interception is "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."[36] Statutorily excluded from the definition of "electronic, mechanical, or other device" are those devices that are (i) furnished for and being used for a subscriber's ordinary course of business, (ii) being used by a provider of wire or electronic communication in the ordinary course of business or (iii) by law enforcement in the ordinary course of their duties.[37] CoreCivic argues that all three exceptions apply to its Inmate Telephone System (ITS).[38]

The law-enforcement and business-use exceptions—regardless of whether CoreCivic is a subscriber under (i) or a provider under (ii)—appear inapposite to the unlawful use that Bliss alleges. Although the Ninth Circuit has yet to interpret the section,[39] many of its sister circuits have done so, and their reasonings are instructive here. In giving full effect to the text of the statute, the Eleventh Circuit held that "[t]he phrase 'in the *ordinary* course of business' cannot be expanded to mean anything that interests a company."[40] And as the First Circuit recognized,

---

interceptions have recklessly disregarded attorney-client privilege without any legitimate cause. So her punitive-damage requests may remain.

[36] 18 U.S.C. § 2510(4).

[37] *Id.* § 2510(5).

[38] ECF No. 129 at 6–9.

[39] *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1124 (9th Cir. 2020) (noting that the issue lacks fully developed caselaw and declining to resolve its merits). Although I find that the law-enforcement exception is inapplicable to the specific facts of this case, I reject Bliss's broad argument that the exception never applies to correctional settings or to private entities acting under color of law. *See* ECF No. 134 at 10–12. Courts have long held that private entities performing public functions step into the shoes of the government and are thus similarly constrained by laws that constrain state action, and that the law-enforcement exception under the Federal Wiretap Act generally applies to correctional officers. *See, e.g.*, *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991); *United States v. Lewis*, 406 F.3d 11, 17 (1st Cir. 2005).

[40] *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983) (emphasis added).

"[t]hat an individual is an investigative or law[-]enforcement officer does not mean that all investigative activity is in the ordinary course of his duties."[41] The Second and Tenth Circuits found it an ordinary business use when the intercepting party had accessed the communications to "transmit[] data over its equipment" "in its capacity" as a provider, and not for any other purpose.[42] The Sixth Circuit held that for an act to be an ordinary business use, it must be done "(1) for a legitimate business purpose, (2) routine[,] and (3) with notice."[43] And because in that case the intercepted party did not have notice, the court found that the business-use exception was inapplicable. The Fourth and Seventh Circuits similarly rejected the contention that interceptions without prior notice were in the ordinary course of business.[44] And considering the Senate Report about the law, which outlines that the statute prohibits all nonroutine surveillance not done in service of a major-crime investigation "after obtaining a court order," the First Circuit rejected a party's invitation to create an additional, atextual "prison exemption" to the law.[45]

The weight of the authority supports the finding that CoreCivic's alleged actions amount to an interception under the federal statute. Bliss has alleged, and I take as true for purposes of

---

[41] *Lewis*, 406 F.3d at 18.

[42] *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1249 (10th Cir. 2012).

[43] *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001).

[44] *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999); *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740–42 (4th Cir. 1994).

[45] *Campiti v. Walonis*, 611 F.2d 387, 392 n.5 (1st Cir. 1979) (cleaned up). CoreCivic attempts to distinguish *Campiti* by referencing the First Circuit's refusal to directly answer the question whether an established recording policy in correctional facilities makes recording calls an ordinary business use. ECF No. 138 at 5. But like *Campiti*, this case appears to present an "exceptional course of conduct." 611 F.2d at 392. Although CoreCivic concedes that it can and does create "do not record" lists for attorneys, ECF No. 138 at 4, Bliss alleges that her attorney-client communications were *intentionally* intercepted anyway.

resolving this motion, that CoreCivic monitored and recorded her attorney-client communications while acknowledging elsewhere that it lacks a legitimate reason to do so.[46] And it did so despite being notified of Bliss's objections and their privileged status, and apparently maintaining a "do not record" list for some attorneys.[47] Despite raising the law-enforcement exception, CoreCivic does not present a particular investigative reason for recording the calls between Bliss and her incarcerated clients that would make that exception applicable.[48] Finally, the parties dispute the level of notice Bliss and her clients had about the recording policy,[49] so resolving that factual dispute in Bliss's favor at this stage,[50] I find that she lacked actual notice that her calls to her clients were being monitored and recorded. So considering the lack of a legitimate reason to record privileged calls, the apparent exceptional nature of the interception, and the absence of actual notice, I also find that Bliss has sufficiently pled facts showing CoreCivic's actions to be an interception without exception under the Wiretap Acts.

### C. Bliss's allegations show that she had a reasonable expectation of privacy and did not consent to CoreCivic's interceptions.

As to the fourth element of a violation of the Wiretap Acts, CoreCivic raises two exceptions: (1) Bliss and/or her clients had no reasonable expectation of privacy and (2) Bliss and/or her clients consented to the interceptions. Although the right to privacy enjoyed by the average American is curtailed significantly in the prison setting,[51] incarcerated people maintain a

---

[46] ECF No. 128 at ¶¶ 36–38.
[47] ECF No. 138 at 4.
[48] ECF No. 134; ECF No. 138; *see Campiti*, 611 F.2d at 392 n.5.
[49] ECF No. 134 at 6, 14–17; ECF No. 129 at 12–14.
[50] *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).
[51] *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984).

9

reasonable expectation of privacy in limited circumstances.[52] "It is axiomatic that the attorney-client privilege confers upon the client an expectation of privacy in his or her confidential communications with the attorney."[53] And while the Ninth Circuit has held that in general, the incarcerated do not have an objectively reasonable expectation of privacy in their outbound calls, the court excepted from that analysis calls placed to the inmate's attorney.[54]

A "reasonable expectation of privacy" consists of (1) a subjective expectation of privacy that is (2) objectively reasonable.[55] Bliss alleges that she believed her client communications to be private and protected by privilege, that she wouldn't have communicated with her clients in the same way if she didn't so believe, and that she expected her conversations with clients to remain confidential, especially after she directly objected to the interception of her calls.[56] Taken as true, these allegations are sufficient to plead a subjective expectation of privacy.

Citing caselaw about incarcerated people's phone calls to associates in "general[]" and "ordinary" circumstances, CoreCivic counters that because a prerecorded message and a sign in the facility informed callers that their conversations were "subject to" recording and monitoring, any expectation of privacy was objectively unreasonable.[57] But following Bliss's objections, and

---

[52] *Franklin v. Oregon*, 662 F.2d 1337, 1347 (9th Cir.1981).

[53] *DeMassa v. Nunez*, 770 F.2d 1505, 1506 (9th Cir. 1985).

[54] *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996).

[55] *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978) (citing *United States v. Freie*, 545 F.2d 1217, 1223 (9th Cir. 1976)).

[56] ECF No. 128 at ¶¶ 18–28.

[57] ECF No. 129 at 16–17. CoreCivic also argues that "Nevada law" exempts the use of the ITS from the Nevada Wiretap Act, citing a 1986 advisory opinion of the Nevada Attorney General. *See* ECF No. 129 at 17. But the Attorney General's construction of a statute is not "law," nor is it "binding upon the courts." *Tahoe Reg'l Plan. Agency v. McKay*, 769 F.2d 534, 539 (9th Cir. 1985). Neither is it due the deference given to state administrative agencies. *Id.* "[W]hether the [Wiretap Act] has, in fact, been violated remains a determination for the courts." *Id.* And even taking into consideration the Attorney General's opinion, as with CoreCivic's other cited

10

given CoreCivic's admitted ability to *not* record attorney-client calls, it remains objectively reasonable that an attorney in Bliss's position and her incarcerated clients would believe their privileged calls to be private. For the same reasons, and because without proper notice neither Bliss nor her clients could have actually or impliedly consented to the interceptions, I find that she has plausibly alleged that she and/or her clients did not consent to the monitoring and recording of their privileged calls. Indeed, Bliss's alleged objections to CoreCivic and the court in which she was representing her clients indicate an apparent withdrawal of any consent that may have existed under the circumstances. So I deny CoreCivic's motion to dismiss Bliss's complaint for failure to state a claim.

## Conclusion

IT IS THEREFORE ORDERED that defendant CoreCivic, Inc.'s motion to dismiss **[ECF No. 129] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
January 14, 2022

---

authorities, it does not address the extraordinary circumstances underlying attorney-client conversations that are not presented in the routine monitoring of everyday conversations had by the incarcerated.