Daniel P. Struck
Arizona Bar No. 012377
(admitted pro hac vice)
Jacob B. Lee
Nevada Bar No. 012428
Ashlee B. Hesman
Nevada Bar No. 012740
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
jlee@strucklove.com
ahesman@strucklove.com

Gina G. Winspear
Nevada Bar No. 005552
DENNETT WINSPEAR, LLP
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone: (702) 839-1100
gwinspear@dennettwinspear.com

*Attorneys for Defendant CoreCivic, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Kathleen Bliss, on behalf of herself, the Proposed Nationwide Rule 23 Class, and the Proposed Nevada Subclass,<br><br>Plaintiff,<br><br>v.<br><br>CoreCivic, Inc.,<br><br>Defendant. | Case No. 2:18-cv-01280-JAD-GWF<br><br>**SECOND ADDENDUM TO STIPULATION FOR ENTRY OF ORDER CONTROLLING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Kathleen Bliss ("Plaintiff") and CoreCivic, Inc. ("CoreCivic") (collectively, the "Parties" and singularly, "Party"), through their respective counsel, stipulate and agree that the following specifications shall modify the December 20, 2018 Stipulation for Entry of Order Controlling Discovery of Electronically Stored Information (Dkt. 46) and January 23, 2019 Addendum (Dkt. 56) relating to discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action,

and jointly request that the Court enter the following Order Controlling Discovery of Electronically Stored Information ("ESI").

**IX.    SECOND ADDENDUM TO: IDENTIFICATION AND COLLECTION OF DOCUMENTS**

A.    This second addendum refers to Second-Stage ESI, which is ESI collected from custodians related to 46 facilities at issue beyond the Nevada Southern Detention Center, as well as additional custodians at CoreCivic's Facility Support Center which were not previously collected. The parties have reached agreement on the custodians. No later than the second rolling production, CoreCivic will provide for the facility-based custodians a list of the custodian names, job position, and date for each job position and corresponding facility where such person worked during the relevant time period.

B.    The time period of collection will be from July 1, 2016 through July 31, 2019.

C.    CoreCivic will use Technology Assisted Review ("TAR") 2.0 to expedite review and production of Second-Stage ESI. To the extent any party identifies issues that it contends make compliance with any of the provisions of this Agreement impossible or overly burdensome, the parties shall meet and confer regarding an appropriate and reasonable alternative.

1.    The parties will agree on and utilize broad search terms to limit the review scope to include those documents plus family members of those documents. The broad search terms will help the parties account for the wide variety of positions included among the roughly 300 custodians.

2.    Prior to any collection or production, CoreCivic will agree to conduct a one-time null-set review (documents which do not hit on any search terms) of 1,200 documents using the current negotiated list of search terms. This sample will be randomly selected from up to ten custodians during the same 18-month period based upon a mix of positions identified by Plaintiff. CoreCivic will endeavor to ensure that the final custodians will represent, as evenly as possible during that period, a mix of facilities where the Securus, GTL, ICSolutions, and Talton inmate telephone systems were used. Documents included in

2

this sample will be limited to .msg, .pdf, .doc, .docx, .ppt and .pptx formats. If responsive documents are found during the Null Set review, CoreCivic will produce the responsive documents (without the complete document families) separate and apart from regular productions for Plaintiff's review. Within one week of the production, the parties will meet and confer to determine if any additional terms, or modifications to existing terms, are needed before CoreCivic will commence the collection and review of Second-Stage ESI. If no responsive documents are found during the null-set review, CoreCivic will notify Plaintiff and commence collection and review of Second-Stage ESI using the current negotiated list of search terms.

3.      Documents deemed not suitable for TAR due to filesize, filetype, document extension, or other processing exception reasons (including corrupt or password-protected files) will be excluded from TAR review. Also, documents identified as conceptually not suited to TAR may be excluded. Reasons for exclusions with numbers of excluded documents will be catalogued with and shared with the other party on a rolling basis. For documents excluded by file type, counts of each excluded file type shall be disclosed. Parties will conduct appropriate search and/or review of excluded reasonably reviewable files. CoreCivic will disclose its process prior to the first search and/or review of excluded files. Exclusions may be adjusted as needed throughout the review and will be disclosed. Files which CoreCivic contends are not reasonably reviewable will be identified on a log by with file metadata, exception reason, and reason such file is not reasonably reviewable.

4.      CoreCivic will review a random statistical (95 confidence % +/- 5%) sample to initially estimate the richness of the TAR review set (documents remaining after exclusions). CoreCivic will perform the Initial Richness Sample on a representative sample of custodial positions. At the end of this step, CoreCivic will disclose the results of its Initial Richness Samples and the volumes of their TAR review sets. If the Initial Richness Sample is less than 10% responsive, the parties will discuss adaptations for a low richness review, including but not limited to, modifications of the search terms. The parties will make a good

faith effort to increase the richness of the existing data set before considering modifications of the search terms.

5.    Plaintiff will provide up to 400 initial training documents, including synthetic documents, within one week of the completion of the null-set review. Where possible, all training documents should be provided in their native format with meta-data in a .dat load file.  If native format documents are not available, Plaintiff shall provide both the metadata, image files and extracted text files for each training document.  Plaintiff may provide additional training documents at any time. CoreCivic will implement all documents received from Plaintiff prior to commencement of review as training documents in CoreCivic's TAR project. Should additional training documents be later received, CoreCivic will implement them at the time of ingestion of the next set of ESI into the project, as soon as is technically feasible, but will not delay the ingestion and review of additional ESI pending implementation.

6.    CoreCivic will utilize Brainspace's CMML categorization module to conduct a continuous active learning (also known as "TAR 2.0") review. CoreCivic will utilize commercially reasonable practices to perform the review workflow to find responsive documents. Prior to beginning review, CoreCivic will use targeted searching to find several examples for each request for production where relevant non-duplicative ESI may exist to identify seed set documents. In the event CoreCivic cannot find any examples relating to a particular request, it will notify Plaintiff's counsel, who may identify additional examples from previously produced ESI.

7.    CoreCivic will monitor round precision (responsiveness of each round of high-score documents reviewed, not including family members) throughout the review and provide weekly round reports for Plaintiff's review. CoreCivic will perform Active Diverse sampling periodically throughout the review and after each batch of documents are promoted to the TAR review project to ensure the health of the model.

8.    When round precision has dropped and holds consistently at a sufficiently low percent, the review may be presumed finished. The percentage may be deemed low

4

enough to finish when responsiveness is consistently lower than 5%, is significantly lower than the TAR review set richness, declines by less than 1% over the final three rounds, and each of the three final rounds includes 200 documents.

9. When CoreCivic's review is presumed finished, it will sample to a statistical confidence level of 95% +/- 2.5% documents within the remaining unreviewed TAR set (which is presumed not responsive). No family members of responsive documents will exist within this unreviewed set (the "Non-Producible Validation Sample"). Using this sample, the party will calculate the Elusion Rate (percent responsive of the Validation Sample).

10. Recall will be calculated as follows:

Total Responsive Documents = Documents tagged responsive + (Unreviewed TAR Set documents x Elusion Rate)

Recall = Documents tagged responsive / Total Responsive Documents

11. CoreCivic will also provide the following information regarding the review:

a. Number of documents reviewed

b. Number of documents not reviewed

c. Number of high-score documents reviewed

d. Number and identification by Bates number of responsive documents tagged

e. Round precision of the last three review rounds (high-score documents only)

f. Volumes of the last three review rounds (high-score documents only)

g. Number of rounds of Diverse Active rounds and total number of Diverse Active documents reviewed

h. Elusion Rate

i. Recall

12. After the above metrics are calculated, if the Validation Sample contains a statistically significant quantity of responsive documents, CoreCivic will use the responsive

validation documents as training documents and review additional high-score documents as appropriate to find additional responsive documents.

13. Within 10 business days of being provided information in Paragraph C(11), counsel for Plaintiff will either indicate their agreement that the review is complete or meet and confer to discuss results and determine whether additional search or review may be appropriate and proportional.

14. Upon agreement that the review is complete (or an Order from the Court if the parties cannot reach agreement themselves), non-responsive data may be archived and removed from the active review platform. Further, CoreCivic may, at its discretion, migrate responsive data to any other review platform or vendor host.  This provision, and any related archiving, does not absolve CoreCivic of any of its preservation obligations or limit any party's right to seek additional discovery or protection from additional discovery under the Federal Rules.

D.      Production of Retrieved Documents.

1. Prior to processing and review, CoreCivic may use email threading to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread. If an email has an attachment, and subsequent replies omit that attachment, then the original email with attachment shall be included in the production. Further, if an email splits into two (or more) separate threads, then each thread shall be included in the production. Only email messages in which the full text is included in a more recent email may be excluded through threading. To the extent any portion of a prior message has been changed, deleted, or removed, it is deemed to constitute a separate thread and must be produced.

2. CoreCivic will produce the first batch of documents no later than four weeks after it identifies the seed set documents described in Section IX.C.6. The remaining productions will occur every three weeks.

3.      All other provisions relating to production of responsive retrieved documents contained in either the December 20, 2018 Stipulation and/or January 22, 2019 Addendum remain in effect.

DATED this 17th day of June 2022.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By s/Jacob B. Lee
    Daniel P. Struck
    Jacob B. Lee
    Ashlee B. Hesman
    3100 West Ray Road, Suite 300
    Chandler, AZ 85226
    dstruck@strucklove.com
    jlee@strucklove.com
    ahesman@strucklove.com

    Gina G. Winspear
    DENNETT WINSPEAR
    3301 North Buffalo Dr., Suite 195
    Las Vegas, NV 89129
    gwinspear@dennettwinspear.com

    *Attorneys for Defendant CoreCivic, Inc.*

NICHOLS KASTER, PLLP

By s/Charles J. O'Meara
    Anna P. Prakash
    Matthew H. Morgan
    Charles A. Delbridge
    Rebekah L. Bailey
    Melanie A. Johnson
    Charles J. O'Meara
    4700 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    aprakash@nka.com
    morgan@nka.com
    cdelbridge@nka.com
    bailey@nka.com
    mjohnson@nka.com
    comeara@nka.com

    Lance D. Sandage

7

SANDAGE LAW, LLC
1600 Genessee Street, Suite 655
Kansas City, MO 64102
lance@sandagelaw.com

Paul S. Padda
Joshua Y. Ang
PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, NV 89103
psp@paulpaddalaw.com
ja@paulpaddalaw.com


Joseph K. Eischens
THE LAW OFFICE OF JOSEPH K. EISCHENS
1321 Burlington Street, Suite 202
North Kansas City, MO 64116
joe@jkemediation.com

Michael Hodgson
THE HODGSON LAW FIRM, LLC
3699 SW Pryor Road
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com

*Attorneys for Plaintiff*


**IT IS SO ORDERED:**

_____
UNITED STATES MAGISTRATE JUDGE

DATED:___June 17, 2022_____

8